# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

NATHAN RILEY,

                Plaintiff

      v.

DAVID GRAINEY, et al.,

                Defendants

CIVIL ACTION NO. 3:12-CV-02470

(CAPUTO, J.)
(MEHALCHICK, M.J.)

## <u>REPORT AND RECOMMENDATION</u>

Nathan Riley is a *pro se* inmate incarcerated at the State Correctional Institution at Greene ("SCI-Greene"). On December 11, 2012, he filed a civil rights action pursuant to 42 U.S.C. § 1983 against several defendants. (Doc. 1). Riley alleges several claims in violation of his First, Eighth, and Fourteenth Amendment Rights, and in violation of the Americans with Disabilities Act. (Doc. 1). Department of Corrections Defendants Maria Balestrieri, Mark Cappoza, Louis S. Folino, David Grainey, Paul Palya, Michael Smith, and Dorina Varner bring a Motion to Dismiss arising out of claims related to Plaintiff's "Z-Code" housing status. (Doc. 14). Defendant Jin brings a separate Motion to Dismiss arising out of Plaintiff's claims related to the medical treatment of his right and left hands. (Doc. 17). Both Motions to Dismiss are ripe for disposition. For the reasons that follow, it is recommended that this Court **GRANT** both Motions to Dismiss. (Docs. 14, Doc. 17).

I.    BACKGROUND AND PROCEDURAL HISTORY

Riley is currently an inmate at SCI-Greene. Before he was transferred to SCI-Greene, Riley was an inmate at SCI-Retreat. On January 12, 2010, he sustained an injury to his left hand when he punched his cell mate in the face at SCI-Retreat. (Doc. 1, Compl. ¶ 42; Doc. 1, p. 23). Riley's hand was put into a cast. (Doc. 1, Compl. ¶ 42), and he experienced numbness in his left hand, was unable to make a complete first, felt stiffness in his joints, and was in constant pain. (Doc. 1, Compl. ¶ 43). Sometime soon thereafter, Riley was transferred from SCI-Retreat to SCI-Greene (Doc. 1, p. 23).

Prior to December 16, 2010, Riley was confined to the administrative segregation Restricted Housing Unit at SCI-Greene. (Doc. 1, Compl. ¶ 14). While confined in the administrative segregation unit, Riley used a flex-pen for writing. (Doc. 1, Compl. ¶ 39). As a result of his continuous use of the flex-pen, Riley developed carpal tunnel syndrome in his right hand. (Doc. 1, Compl. ¶ 39). Riley was diagnosed as having carpal tunnel syndrome by Defendants Diggs and Antanovich. (Doc. 1, Compl. ¶ 40).

Riley filed several sick-call slips requesting medical treatment. (Doc. 1, Compl. ¶ 44). He alleges he had pain in his left hand for over two years while Defendants Jin, Diggs, and Antanovich refused to treat him. (Doc. 1, Compl. ¶ 45). He further alleges that Defendants Jin, Diggs, and Antanovich were deliberately indifferent to his medical condition because they were aware of the injury to his left hand and denied him medical care. (Doc. 1, Compl. ¶ 53).

On August 31, 2010, Riley filed an inmate grievance, No. 333335, against Defendant Jin, the medical director at SCI-Greene, Jin's assistant, Defendant Diggs, and the CRNP,

Defendant Antanovich. The grievance references Riley's concerns about the numbness in his left hand and the carpal tunnel syndrome in his right hand. (Doc. 1, p. 21). Riley was advised to "cut back on writing" as a solution to the carpal tunnel syndrome in his right hand. (Doc. 1, p. 22).

On September 24, 2010, Riley received an Initial Review Response to his grievance. (Doc. 1, p. 23). The response indicated that his hand was injured when he punched his cell mate in the face while at SCI-Retreat. (Doc. 1, p. 23). His left hand was diagnosed as fractured and his hand was casted before arriving at SCI-Greene. (Doc. 1, p. 23). According to the Initial Review Response, Defendant Jin treated Riley's condition at SCI-Greene and referred him to a physical therapist to assist with the pain in his left hand. (Doc. 1, p. 24; Doc. 22, p. 2). Riley saw the physical therapist on April 22, 2010 and on May 20, 2010. (Doc. 1, p. 24). Riley's last sick call at SCI-Greene was on June 17, 2010. (Doc. 1, p. 23). The Initial Review Response also indicated that Defendant Diggs addressed Riley's concerns regarding his right hand, and had advised him to refrain from repetitive wrist movements. (Doc. 1, p. 23). Accordingly, the grievance was denied. (Doc. 1, p. 23).

On October 4, 2010, Riley submitted a first-level appeal. (Doc. 1, p. 25). The appeal was denied by Defendant Folino, Superintendent of SCI-Greene, on October 14, 2010. (Doc. 1, p. 25). On November 3, 2010, Riley filed an appeal to final review for the grievance, and the final appeal was denied by Defendant Varner, the DOC Chief Grievance Officer, on December 23, 2010. (Doc. 1-1, p. 2). Riley alleges claims of deliberate indifference based on his medical needs for his hand injuries and states that he submitted "sick call slips" several times between March 2010 and June 2010, but was denied treatment. (Doc. 1, p. 22). Riley

that his left and right hands have worsened over time and can be repaired only through constructive surgery. (Doc. 22, p. 2).

On December 16, 2010, Riley requested release into the SCI-Greene general population from the administrative segregation Restricted Housing Unit at SCI-Greene; his request was granted by the Program Review Committee. (Doc. 1, Compl. ¶ 14). Defendants Grainey (Major of the Guard), Smith (Corrections Activities Manager II), and Cappoza (former Deputy Superintendent for Centralized Services) were part of the committee panel. (Doc. 1, Compl. ¶ 14). The Committee then informed Riley that he would have to double-cell with another inmate. (Doc. 1, Compl. ¶ 15). Riley alleges that he had a Z-Code single cell status, but when he was released to the SCI-Greene general population facility, he no longer had the Z-Code status.

Riley alleges that during the committee review on December 16, 2010, he learned for the first time that he did not have a Z-code status, at which point he objected to the removal of his Z-code status. Defendants Grainey, Smith, and Cappoza instructed Riley that he had the choice of either a double-cell or administrative segregation. Riley chose the double-cell. (Doc. 1, Compl. ¶ 15). Riley submits that these three Defendants, Grainey, Smith and Cappoza, are the individuals who made the decision to remove his Z-status. (Doc. 1, Compl. ¶ 17-18).

After Riley's release from administrative segregation, he contacted Defendant Palya (Unit Manager) regarding his single-cell status removal. (Doc. 1, Compl. ¶ 20). On April 2, 2011, Riley submitted a DC-135A Inmate's Request to Staff Member to Defendant Palya. (Doc. 1, Compl. ¶ 21). In his request, Riley stated that prior to entering the Restricted

Housing Unit, he believed he had been on Z-code single-cell status, and that he had been for the past sixteen years. (Doc. 1, Compl. ¶ 22). Riley asserts that his Z-code status was removed when he was released into the population at SCI-Greene in December 2010. (Doc. 1, Compl. ¶ 22). Defendant Palya informed Riley that he did not have a Z-Code status and had not had such status since 1997. (Doc. 1, Compl. ¶ 23).

On June 18, 2011, Riley submitted a DC-135A Inmate's Request to Staff Member to Defendant Balestrieri (Corrections Counselor II). Defendant Balestrieri informed Riley that his Z-code was removed in 1998. Defendant Balestrieri noted that Riley had always had a cellmate since his return to the General Population at SCI-Greene. (Doc. 1, Compl. ¶¶ 24-26). On June 21, 2011, Riley submitted a second DC-135A Inmate's Request to Staff Member to Defendant Balestrieri. On June 22, 2011, she replied that Riley had been double-celled since March and there has been no indication of any problems. (Doc. 1, Compl. ¶¶ 24-26). On July 7, 2011, Riley submitted a third DC-135A Inmate's Request to Staff Member to Defendant Balestrieri. Defendant Balestrieri responded (date unknown) stating that she could not speak to matters that occurred several years ago at another facility. Additionally, she indicated that the reason he received a Z-code initially was based on his age – which was no longer a factor. She further indicated that Riley had demonstrated that he could control his behavior and the need for a single cell is no longer applicable. (Doc. 1, Compl. ¶¶ 24-26).

On July 18, 2011, Riley filed a formal grievance regarding his Z-Code status. (Doc. 1, Compl. ¶ 33), asserting that forcing him to double-cell with another inmate had created a hostile living environment; that he suffers from lingering psychological effects of prolonged

periods in a control unit; and that he suffers from anti-social behavior and social sensory deprivation effects as a result of prolonged confinement in administrative segregation.

On August 4, 2011, Defendant Palya responded to Riley's grievance stating that there was nothing in his file indicating a physical removal of his Z-code status, but that procedures may have been different in 1999. (Doc. 1, Compl. ¶ 34). Riley then appealed the decision to Defendants Folino and Varner (Doc. 1, Compl. ¶ 35), and the grievance was affirmed.

## II. DISCUSSION[1]

### A. LEGAL STANDARD

Defendants have filed two motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Additionally, this Court also has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). Specifically, the Court must assess whether a *pro se* complaint fails to state a claim upon which relief may be granted, since Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Furthermore, when reviewing *in forma pauperis* complaints, 28 U.S.C. § 1915(e)(2)(B)(ii) specifically enjoins the Court to "dismiss the complaint at any time if the

---

[1] Riley voluntarily withdrew his demand for monetary damages against Defendants in their official capacity. (Doc. 23). The Court will analyze Defendants' Motions to Dismiss and consider only declaratory and injunctive relief available for any surviving claims.

court determines that … the action … fails to state a claim upon which relief may be granted."

The United States Court of Appeals for the Third Circuit has noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), continuing with our opinion in *Phillips [v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1955, 173 L. Ed. 2d 868 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

> *Fowler v. UPMC Shadyside*, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff.

*Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

Additionally a court need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S. Ct. 897, 74 L. Ed. 2d 723 (1983). As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), in order to state a

valid cause of action a plaintiff must provide some factual grounds for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In keeping with the principles of *Twombly*, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, 556 U.S. at 679.

Thus, following *Twombly* and *Iqbal*, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept

all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

*Fowler*, 578 F.3d at 210-11.

These heightened pleading standards apply to all aspects of the Court's threshold analysis of a complaint's legal sufficiency. *Hakeem v. Fisher*, 2010 WL 5463325, at *5 (M.D. Pa. Dec. 1, 2010) *report and recommendation adopted*, 2010 WL 5463134 (M.D. Pa. Dec. 29, 2010). Furthermore, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

B. RILEY'S FIRST AMENDMENT RETALIATION CLAIM AGAINST DEFENDANTS GRAINEY, SMITH, AND CAPOZZA BASED ON Z-CODE HOUSING STATUS

Riley alleges that his Z-Code status was removed by Defendants Grainey, Smith, and Capozza in retaliation for Riley filing various lawsuits and grievances. Z-Code housing is a form of single cell housing provided to inmates with active mental health problems who for health and safety reasons, in the judgment of prison health care professionals, would benefit from such housing. *Keeling v. Damiter*, 2011 WL 1984358, at *4 (M.D. Pa. Mar. 1, 2011) *report and recommendation adopted*, 2011 WL 1979894 (M.D. Pa. May 20, 2011) *aff'd*, 452 Fed.

9

Appx. 233 (3d Cir. 2011) *cert. dismissed,* 133 S. Ct. 179, 184 L. Ed. 2d 6 (U.S. 2012). Z-Code housing assignments are governed by prison regulations, and are made at the discretion of prison officials. Specifically, Department of Corrections Policy 11.2.1 governs Single Cell Status "Z Codes" for inmates. (Policy 11.2.1, Section 5).[2] While Policy 11.2.1 provides that inmates with mental health problems should be considered for single cells, Policy 11.2.1 does not mandate or guarantee a single cell for any inmate, and not every inmate with a mental health history or problem receives a single cell. *See* Policy 11.2.1.

A prisoner alleging retaliation in violation of the Constitution must satisfy three elements: (1) that he engaged in a constitutionally protected activity, *Rauser v. Horn,* 241 F.3d 330, 333 (3d Cir. 2001); (2) that he suffered some adverse action at the hands of prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, *Allah v. Seiverling,* 229 F.3d 220, 225 (3d Cir. 2000) (citing *Suppan v. Dadonna,* 203 F.3d 228, 235 (3d Cir. 2000)); and (3) that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to" take the adverse action against him.

---

[2] The Court takes judicial notice of the Department of Corrections' Policy. The Department's Administrative Directives are available on its web site http://www.cor.state.pa.us, and are facts capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. This policy, therefore, is a matter as to which this Court may take judicial notice pursuant to F.R.E. 201(d) and (b)(2). *See Ransome v. Mooney,* 2010 WL 2490751 (M.D. Pa. Apr. 9, 2010), *report and recommendation adopted,* 2010 WL 2505891 (M.D. Pa. June 15, 2010); *see also Leonhauser v. Long,* 2012 WL 398642, n.2 (M.D. Pa. Jan. 4, 2012), *report and recommendation adopted,* 2012 WL 398637 (M.D. Pa. Feb. 7, 2012) ("[t]he court may take judicial notice of Department of Corrections regulations.")

*Rauser,* 241 F.3d at 333 (quoting *Mount Healthy Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977)). If a plaintiff establishes a prima facie case of retaliation, the burden then shifts to the prison officials to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if the plaintiff were not engaging in the constitutionally protected activities. *Rauser,* 241 F.3d at 334 ("Once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.").

Retaliation for the exercise of First Amendment rights is a constitutional violation. *White v. Napoleon,* 897 F.2d 103, 111-12 (3d Cir. 1990) ("Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983."). "As a threshold matter, a prisoner-plaintiff in a retaliation case must prove that the conduct which led to the alleged retaliation was constitutionally protected." *Rauser,* 241 F.3d at 333. Riley avers that the Z-Code status was removed by Defendants "in retaliation by the defendants to punish the Plaintiff for exercising the party injured First Amendment to the Constitution right to speak, i.e., to complain about the Plaintiff's placement in administrative segregation, filing of grievances, lawsuits against prison officials within the Department of Corrections, and against the above-named defendants." (Doc. 1, Compl. ¶ 18).

However, Riley fails to allege any facts establishing a connection between the "grievances and lawsuits" he filed and the conduct by Defendants. Riley does not indicate

that the named Defendants were involved in the said grievances or lawsuits, or whether the named Defendants even had any knowledge about his grievances or lawsuits. Moreover, the attachments to Plaintiff's Complaint establish that Defendants did not remove Riley's Z-Code status, as it was removed more than ten years before Riley appeared before the Program Review Committee comprised of Defendants Grainey, Smith, and Capozza. Thus, Riley has failed to allege any facts that could plausibly establish that Defendants removed the Z-status in retaliation, and has not alleged any facts necessary to sustain a claim for First Amendment Retaliation against Defendants Grainey, Smith, and Capozza. As such, it is recommended that this Court **GRANT** Defendants' Motion to Dismiss Plaintiff's First Amendment Retaliation claim with prejudice. Any leave to amend this claim would be futile, as the attachments to Plaintiff's Complaint establish that Defendants Grainey, Smith and Capozza did not remove his Z-Code status.

C. RILEY'S PROCEDURAL DUE PROCESS CLAIMS AGAINST DEFENDANTS GRAINEY, SMITH, AND CAPOZZA

Riley also alleges his procedural due process rights were violated because his Z-Code status was removed without notice and a staffing hearing in violation of Policy 11.2.1. Defendants argue that there is no notice and hearing requirement to remove a Z-Code.

It is well established that prisoners have no constitutionally protected liberty interest in a single cell housing assignment. *Rivera v. Rendell*, 2013 WL 1339273, *10 (M.D. Pa. Apr. 1, 2013); *Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2391, 69 L.Ed.2d 59 (1981). The United States Constitution does not confer any right upon an inmate to any particular custody or security classification. *Keeling v. Damiter*, 2011 WL 1984358, at *7 (M.D. Pa.

Mar. 1, 2011) (citing *Moody v. Daggett*, 429 U.S. 78, 88, 97 S. Ct. 274, 50 L. Ed. 2d 236 (1976); *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S. Ct. 2543, 49 L. Ed. 2d 466 (1976)). To the extent that Riley's claims are premised on some constitutional right to a particular housing arrangement, those claims plainly fail to state a cause of action upon which relief can be granted. *Keeling v. Damiter*, 2011 WL 1984358, at *8.

Further, there is no due process violation if a Z-Code status is removed without a hearing. *Carpenter v. Kloptoski*, 2012 WL 911558, at *3 (M.D. Pa. Mar. 16, 2012). In *Carpenter*, prisoner-plaintiff argued that his due process rights were violated when he "was removed from his single cell status without ever having had a competent or meaningful review as required by DOC policy which mandated that persons suffering from mental illnesses be reviewed by Psychiatric Staff prior to having his status removed." *Carpenter*, 2012 WL 911558, at *3. The Court held that prison conditions do not impact a protected liberty interest unless they result in an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Carpenter*, 08-2233, 2012 WL 911558, at *3 (quoting *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995)). Living in a double-cell is an expected ordinary incident of prison life, and retaining a single-cell status is not a protected liberty interest. See *Austin v. Chesney*, 1995 WL 498720, at *3 (E.D. Pa. Aug. 22, 1995).

Riley has no Fourteenth Amendment right to be housed in a single cell and his right to due process is not offended by any decision to place him in a cell with another inmate. Therefore, it is recommended that this Court **GRANT** Defendants' Motion to Dismiss Plaintiff's procedural due process claim with prejudice, as amendment of this claim would

be futile.

D. RILEY'S EIGHTH AMENDMENT CLAIMS

Riley alleges that prison officials violated his rights under the Eighth Amendment to the United States Constitution by displaying "deliberate indifference" to his medical needs. To sustain such a claim, a plaintiff must plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

> *Hakeem v. Fisher*, No. 10-1627, 2010 WL 5463325, at *5 (M.D. Pa. Dec. 1, 2010) *report and recommendation adopted*, 10-1627, 2010 WL 5463134 (M.D. Pa. Dec. 29, 2010) (citing *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001)).

By including a subjective intent component, the courts have held that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim. *See Jones v. Beard*, 145 Fed. Appx. 743 (3d Cir. 2005) (finding no Eighth Amendment violation where inmate-plaintiff complained about cellmate who had a history of psychological problems, but where plaintiff failed to articulate a specific threat of harm during the weeks prior to an attack). When analyzing deliberate indifference, a court must determine whether the prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 842, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). A prisoner-plaintiff must prove that the prison official "knows of and

14

disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837; *see also Garvey v. Martinez*, 08-2217, 2010 WL 569852, at *6 (M.D. Pa. Feb. 11, 2010).

In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). To establish a violation of his constitutional right to adequate medical care in accordance with this standard, a plaintiff is required to point to evidence that demonstrates (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, or "persistent conduct in the face of resultant pain and risk of permanent injury." *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990) ; *see also Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993). Mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. *Estelle*, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." *Durmer*, 991 F.2d at 67 (citations omitted). In a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. *Clark v. Doe*, 2000 WL

1522855, at *2 (E.D. Pa. Oct. 13, 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). Such complaints fail as constitutional claims under § 1983 since the exercise by a doctor of his professional judgment is never deliberate indifference. *See, e.g., Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) (as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights). Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received, particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services. *See, e.g., Ham v. Greer*, 269 Fed. Appx. 149 (3d Cir. 2008); *Bronson v. White*, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007). Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts. *James v. Pennsylvania Dep't of Corr.*, 230 Fed. Appx. 195, 197 (3d Cir. 2007).Dissatisfaction with the course of medical treatment will not serve as the foundation for an Eighth Amendment claim. *Hakeem v. Fisher*, 2010 WL 5463325, at *7 (M.D. Pa. 2010).

Additionally, where a plaintiff's complaint reflects that an inmate received some level of on-going medical care, prison supervisors may not be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d. Cir. 1993); *see also Spruill v. Gillis*, 372 F.3d 218, 236 (3d. Cir. 2004). This rule

applies specifically to those prison staff whose involvement in a medical matter consists solely of examining, reviewing and addressing an inmate grievance concerning medical issues. Where supervisory staff simply review a grievance, and refer an inmate to medical personnel, it is clear that "merely responding to or reviewing an inmate grievance does not rise to the level of personal involvement necessary to allege an Eighth Amendment deliberate indifference claim." *Hakeem v. Fisher*, 2010 WL 5463325, at *8 (M.D. Pa. Dec. 1, 2010) (citing *Garvey v. Martinez*, 2010 WL 569852,*7 (M.D. Pa. Feb. 11, 2010)).

This supervisory limitation on Eighth Amendment claims also applies outside the medical context:

> A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.

*Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

1.  Claims Against Defendants Jin, Diggs, and Antanovich

Riley states that Defendants were deliberately indifferent to a serious medical need and that he has a right to be free from pain and suffering under the Eighth Amendment. Riley fails to state a claim upon which relief can be granted against Defendants Jin, Diggs,

and Antanovich.[3]

Riley injured his left hand at SCI-Retreat on January 10, 2010 by punching his cell mate in the face. His hand was then diagnosed as fractured, and the hand was casted. When Riley was transferred to SCI-Greene, Defendant Jin met with him. Defendant Jin recommended physical therapy to alleviate the stiffness in Riley's left hand, and Riley had two physical therapy appointments. According to the Initial Review Response, Defendant Jin claims that he treated Riley's condition appropriately, and that Riley had a sick call as late as June 17, 2010. With regard to his right hand, the facts indicate that Riley met with Defendant Diggs, who advised him that he should cut back on his writing to relieve his mild carpal tunnel syndrome and refrain from repetitive wrist movements.

By his own admission, Riley received a cast following the incident, and physical therapy as early as April 2010. The facts as alleged in the Complaint and viewed in a light most favorable to the plaintiff indicate that Riley received medical treatment in response to his injury. As such, Riley fails to state a claim against Defendants Jin, Diggs, and Antanovich based upon the Eighth Amendment's deliberate indifference standard. Therefore, it is recommended that this Court GRANT Defendant Jin's Motion to Dismiss

---

[3] Although Defendants Diggs and Antanovich have not moved to dismiss the claims against them, the Court will address them pursuant to its authority under 28 U.S.C. § 1915(e)(2)(B)(ii) (the court has authority to "dismiss the case at any time if the court determines that … the action … fails to state a claim upon which relief may be granted."

with prejudice, as any amendment of the Complaint would be futile. Additionally, it is recommended that this Court dismiss Defendants Diggs and Antanovich from this lawsuit.

## 2. Claims Against Defendants Palya, Balestrieri, Folino and Varner.

Riley avers that Defendants Palya, Balestrieri, Folino and Varner violated his Eighth Amendment right to be free from cruel and unusual punishment when they assigned him to a double-cell, placing him at a substantial risk of harm. (Doc. 1, p. 13). Specifically, Riley states that Defendants Varner and Folino were deliberately indifferent to his medical needs when they failed to remedy the violation against him regarding his Z-Code status. (Doc. 23, Pl. Brief in Opp.). Riley alleges that Defendants Folino and Varner were either copied on or responded to his grievance and appeal, and therefore they were aware of the Z-Code situation.

Riley further alleges that Defendants Palya, Balestrieri, Folino and Varner were deliberately indifferent to his "need to be returned back to the Z-code single-cell"; that Defendants knew of the "substantial risks" not having a Z-Code status imposed on him; and that Defendants knew that the Z-Code was removed without a notice or hearing. (Doc. 23, Pl. Brief in Opp.). Thus, according to Riley, Defendants acquiesced to this conduct. (Doc. 23, Pl. Brief in Opp.).

The involvement of Defendants Palya, Balestrieri, Folino and Varner, all of whom are prison supervisors, consisted of either denying an administrative grievance filed by Riley, or providing information to Riley regarding his concerns. These facts are not sufficient to allege a claim based on Riley's Eighth Amendment rights. In order for liability to be imposed on a supervising official, that official must have some affirmative role in the alleged

misconduct beyond a failure to remedy the situation. *See Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986). Further, although the Complaint does not allege Eighth Amendment violations against Defendants Folino and Varner in their supervisory capacity regarding Riley's medical grievances, Folino and Varner served in a purely supervisory role with respect to reviewing Riley's grievances related to his right and left hands. In their supervisory roles related to those grievances, Riley also has failed to allege facts sufficient to state a claim based on the Eighth Amendment deliberate indifference standard against Defendants Folino and Varner. For the foregoing reasons, it is recommended that this Court GRANT Defendants' Motion to Dismiss with prejudice.

E. RILEY'S EQUAL PROTECTION CLAIMS AGAINST DEFENDANTS PALYA, BALESTRIERI, FOLINO AND VARNER

Riley alleges that Defendants Palya, Balestrieri, Folino, and Varner violated the Equal Protection Clause by reassigning him to a double cell, and that they treated him differently than other prisoners with less serious disabilities. Riley submits that because there was no rational basis for this disparate treatment, Defendants discriminated against him in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

The Fourteenth Amendment to the United States Constitution provides, in relevant part, that "No state shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. "[T]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or

by its improper execution through duly constituted agents." *Rivera v. Lebanon School Dist.*, 825 F. Supp. 2d 561, 565 (M.D. Pa. 2011) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). To state an equal protection claim, a plaintiff must allege that: (1) he or she was a member of a protected class, (2) he or she was treated differently from similarly situated persons outside of his or her protected class, and (3) the resultant discrimination was purposeful or intentional rather than incidental. *Tillman v. Lebanon County Corr. Facility*, 221 F.3d 410, 423–24 (3d Cir.2000). As a preliminary matter, the named defendants against whom an equal protection claim is brought must be personally involved in the alleged constitutional deprivation. *Carpenter v. Kloptoski*, 2010 WL 891825, at *9 (M.D. Pa. Mar. 10, 2010). Riley's Complaint and the attachments thereto are devoid of any allegations or evidence of personal involvement on the part of Palya, Balestrieri, Folino and Varner in the decision to revoke his single cell status. Any allegation against each of these Defendants is based solely on his supervisory role. As such, Riley has failed to state a claim Defendants Palya, Balestrieri, Folino and Varner based on the Equal Protection Clause of the Fourteenth Amendment and it is therefore recommended that this Court GRANT Defendants' Motion to Dismiss with prejudice as to this claim, as any amendment would be futile.

F.  RILEY'S CLAIMS BASED ON THE AMERICANS WITH DISABILITIES ACT ("ADA") AGAINST DEFENDANTS PALYA, BALESTRIERI, FOLINO AND VARNER

Riley alleges that he is disabled based on his mental disabilities and that by denying him a single cell, Defendants Palya, Balestrieri, Folino and Varner discriminated against him based on his disability in violation of the Americans with Disabilities Act ("ADA"), 42

U.S.C. § 12101.

The ADA was enacted to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1); *George v. Pennsylvania Dept. of Corrections*, 2010 WL 936778, at *7 (M.D. Pa. Mar. 11, 2010). Title II of the ADA prohibits discrimination in connection with access to public services, requiring that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. State prisons fall squarely within the statutory definition of "public entity" in Title II of the ADA. *See Pennsylvania Dept. of Corrections v. Yeskey,* 524 U.S. 206, 210, 118 S. Ct. 1952, 141 L. Ed. 2d 215 (1998); *Brown v. Pennsylvania Dept. of Corrections,* 290 Fed. Appx. 463, 467 (3d Cir. 2008). Under Title II of the ADA, plaintiffs may not sue individual defendants in their personal capacities, but must instead sue the state, state entities, or defendants in their official capacities. *See Koslow v. Commonwealth of Pa.,* 302 F.3d 161, 179 (3d Cir. 2002). To the extent that Riley has sued each defendant in his or her individual capacity, it is recommended that Riley's claims against the defendants in their individual capacities be dismissed as not cognizable under the ADA.

To the extent Riley alleges an ADA claim against Defendants Palya, Balestrieri, Folino and Varner in their official capacities, his claim can proceed if he satisfies the requirements of an ADA claim. *George v. Pennsylvania Dept. of Corrections*, 2010 WL 936778, at *7 (M.D. Pa. Mar. 11, 2010). To establish a violation of Title II of the ADA, an inmate must allege that: (1) he is a qualified individual with a disability; (2) he was either excluded

22

from participating in, or denied the benefit of, a public entity's services, programs or activities; and that (3) such exclusion, denial of benefits, or discrimination was by reason of disability. *See* 42 U.S.C. § 12132; *Maresca v. Blue Ridge Communications,* 363 Fed. Appx. 882, 884 (3d Cir. 2010); *see also George v. Pennsylvania Dept. of Corrections.*, 2010 WL 936778, at *8 (M.D. Pa. Mar. 11, 2010).

The ADA defines the term "disability" as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or, (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). "Merely having an impairment does not make one disabled for the purpose of the ADA. Claimants also need to demonstrate that the impairment limits a major life activity." *Toyota Motor Mfg. v. Williams,* 534 U.S. 184, 195, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002) (*overruled on other grounds* by the ADA Amendments Act of 2008, Pub. L. 110-325, 122 Stat. 353 (2008)). To prove disability, a plaintiff must show that the limitation on the major life activity is substantial. 42 U.S.C. § 12102(1); *Toyota Motor Mfg.,* 534 U.S. at 195. To be substantially limited in a major life activity, "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily live. The impairment must also be permanent or long-term." *Toyota Motor Mfg.,* 534 U.S. at 198. Disability must be assessed on a case-by-case basis, as it is an individualized inquiry. *George v. Pennsylvania Dept. of Corrections.*, 2010 WL 936778, at *8 (M.D. Pa. Mar. 11, 2010) (citing *Toyota Motor Mfg.,* 534 U.S. at 198).

Riley has alleged that he has a mental health condition and therefore he is qualified as disabled under the ADA. (Doc. 23, Br. in Opp. at 9). However, Riley has not sufficiently

alleged that he suffers from a disability that substantially limits one or more of his major life functions and activities. As such, it is recommended that the Court dismiss Riley's ADA claim because he has not alleged facts sufficient to state a cognizable cause of action under the ADA, but that Riley be afforded the opportunity to amend his Complaint to set forth sufficient facts to assert a prima facie ADA claim against the appropriate prison officials in their official capacities.

### III.    RECOMMENDATION

Based on the foregoing, it is recommended that the Court **GRANT** Defendants Grainey, Smith, Cappoza, Balestrieri, Palya, Folino, and Varner's Motion to Dismiss (Doc. 14) as to all claims with prejudice, except that Plaintiff should be given leave to file an amended complaint setting forth his claim under the Americans with Disabilities Act against Defendants Palya, Balestrieri, Folino and Varner in their official capacities. It is further recommended the Court **GRANT** Defendant Jin's Motion to Dismiss (Doc. 17) with prejudice. Additionally, it is recommend that Defendants Diggs and Antanovich be dismissed from this matter pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

BY THE COURT:

Dated: November 8, 2013                    /s/ Karoline Mehalchick

KAROLINE MEHALCHICK
United States Magistrate Judge

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

NATHAN RILEY,
          Plaintiff

   v.

DAVID GRAINEY, et al.,
          Defendants

CIVIL ACTION NO. 3:12-CV-02470

(CAPUTO, J.)
(MEHALCHICK, M.J.)

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **November 8, 2013**.

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Dated: November 8, 2013

*s/ Karoline Mehalchick*
KAROLINE MEHALCHICK
United States Magistrate Judge